No. 28,031.

School District No. 49 in Logan County, *Appellant,* v. The Community High School of Thomas County, Otherwise Known as The Colby Community High School, *Appellee.*

(267 Pac. 23.)

Opinion filed May 5, 1928.

*C. A. Spencer* and *J. H. Jenson,* both of Oakley, for the appellant.

*E. H. Benson,* of Colby, for the appellee.

The opinion of the court was delivered by

Dawson, J.: The plaintiff school district sued to collect an account of $405.40 as tuition fees for the education of certain pupils who reside in the defendant district and who attended school in the plaintiff district during the school year 1924-1925.

The defendant answered with a general denial and filed a cross petition alleging that by mistake it had paid tuition fees to the plaintiff for the education of some of its resident pupils, in the sum

of $345 for the school year 1923-1924 and $475.20 for the school year 1925-1926, for the return of which sums with interest it prayed judgment.

Plaintiff's demurrer to defendant's answer and cross petition was overruled, and this appeal is to determine the propriety of that ruling.

The pleadings of the litigants developed all the pertinent facts. At the town of Page, in Logan county, for some years past the plaintiff school district has conducted a high school. The Barnes law (Laws 1905, ch. 397) with its amendment (R. S. 72-3001) has been adopted in Logan county and the plaintiff school district maintained its high school at the standard required by that act at all times concerned in this lawsuit.

Defendant is a community high school comprised of the whole territory of Thomas county. It came into existence as successor of the former Thomas county high school by virtue of the Laws of 1923, ch. 187 (R. S. 72-2501 *et seq.*).

Plaintiff collected tuition from defendant for the two school years 1923-1924 and 1925-1926, and founds its present action for tuition for the year 1924-1925 upon R. S. 72-2505, which, so far as pertinent, reads:

". . . If any pupil, living within the boundary of said community high-school district, shall, with the approval of the county superintendent, attend any other high school, either approved or accredited outside the boundaries of said community high school, the board of trustees of said community high school shall pay or cause to be paid into the treasury of the said high school which such pupil attends a tuition fee of two dollars per week for the time such pupil is in actual attendance at said high school: . . . *Provided further,* That the provisions of this section relating to tuition shall apply also to pupils attending high schools in adjoining counties. [L. 1923, ch. 187, § 5;. March 20.]"

Defendant partly bases its cross action (as well as its defense) on the theory that the statute governing the controversy is R. S. 72-3014, which reads:

"That tuition shall be free in all high schools established pursuant to Laws 1905, chapter 397 [Barnes law], as amended by later enactments, to pupils residing in the county where such high-school law is in force: *Provided,* That such pupils shall present to the high-school authorities an entrance certificate, signed by the county superintendent of public instruction, certifying that such pupil has completed the course of study prescribed by the state board of education for the pupil below the high school, or who shall pass such entrance examination as the high-school authorities may require: *Provided further,*

That when pupils reside in an adjacent county that does not operate under the provisions of such high-school law established pursuant to Laws 1905, chapter 397, as amended by later enactments, the board of county commissioners of such adjacent county in which the pupils reside, shall, upon recommendation of the county superintendent of public instruction having jurisdiction over the high school where said pupils attend, pay the tuition of $2 per week or fraction thereof, for such pupils to the district in which the high school is located: *Provided further,* That this act shall apply to all high-school pupils residing in any adjacent county that attend high school established under Laws 1905, chapter 397, as amended by later enactments: *Provided further,* That the said county commissioners shall pay such tuition from the general fund of the county where such pupil or pupils reside. [L. 1923, ch. 191, § 1; March 24.]"

It requires only a casual examination of the two statutes just quoted to see that both cannot apply to the matters in controversy between these litigants. And so far as they may be in conflict with each other the latest enactment is controlling. (*Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 226 Pac. 1009; *Board of Education v. Turner, Auditor,* 116 Kan. 735, 229 Pac. 74.) Under this rule of statutory interpretation, R. S. 72-3014 is the governing statute because it took effect four days later than R. S. 72-2505. And, indeed, it would be the governing statute for another reason equally good. There is a field of operation for both these statutes. So far as we are presently concerned, R. S. 72-3014 deals with the method by which a Barnes high-school district is to be reimbursed for the tuition of pupils who reside in an adjacent county which does not operate under the Barnes act—a situation which fits Thomas county pupils attending the plaintiff's Barnes high school like a glove. R. S. 72-2505 governs a more general situation of affairs. If Thomas county pupils should attend any high school outside of Thomas county, at Goodland, Hoxie, or Oberlin, for example (assuming the high schools in those cities are not Barnes high schools and that the other conditions of such attendance were met), the Thomas county community high-school district would be bound to pay the tuition prescribed under R. S. 72-2505, for such a state of affairs would fall precisely within the terms of that statute.

Another point is urged in support of the demurrer to the defendant's cross petition. There is a rule that money paid by mistake of law cannot be recovered although money paid by mistake of fact can be recovered. This rule is less potent nowadays than it was in bygone times; and although it may still be effective in civil actions

between private litigants it seems that it does not govern in actions to recover public funds erroneously or wrongfully expended; and in such actions the question whether such unauthorized expenditure was made through mistake of law or mistake of fact is not ordinarily important. In a recent case, which was vigorously and repeatedly contested before this court, where a school board without statutory authority had expended public funds to. purchase motor busses for the transportation of pupils, which expenditure was concededly a matter of good business judgment and more economical than to pay for such transportation as the statute permitted, it was held that it was the bounden duty of the school board to exhaust every legal resource to recover the money thus unlawfully disbursed. (*State, ex rel., v. Bradbury,* 123 Kan. 495, 256 Pac. 149.)

This interesting question is exhaustively treated in *County of Wayne v. Reynolds,* 126 Mich. 231, 86 A. S. R. 541, where it was held that the county could recover from its ex-county clerk certain moneys which without statutory authority it had paid to him for extra services. To the same effect was *Board of Commissioners of Huntington Co. v. Heaston,* 144 Ind. 583, reported and annotated in 55 A. S. R. 192, 203, *et seq.* In *Ada County v. Gess,* 4 Ida. 611, the action was to recover public money paid to a public officer. One of the defenses invoked was the rule barring recovery of money paid by mistake of law. The court said:

"We are told, however, that money paid through a mistake of law is a voluntary payment, and cannot be recovered back. . . . Some of the authorities cited, however, seem to sustain the contention of the appellant, and some authorities go so far as to hold that payments of the money of the public by its authorized agent to an officer on account of a mistake of law cannot be recovered back. The doctrine is so repugnant to every principle of justice and common honesty that the latter cases do not, by their reasoning, commend themselves to this court. We cannot consent to carry the doctrine beyond settlements between private individuals."

See, also, 30 Cyc. 1301, 1314, 1315.

In the cross petition under present consideration defendant alleged that at the times it had paid to plaintiff the sums sought to be recovered—

"It was not aware and did not know that the plaintiff high-school district was operating under and by virtue of what is commonly known as the 'Barnes high-school law' hereinbefore referred to, and such fact was not brought to the attention of the officers of defendant high-school district, or any of them, until the month of February, 1927."

That allegation pleaded a mistake of fact, which, if established, would furnish a basis for recovery, but of course such an allegation might be traversed and the result would or might be inconclusive, and it would serve no purpose to refrain from applying the rule governing the right and duty of public boards and officials to recover moneys erroneously paid out whether so paid by mistake of fact or mistake of law. Where no intervening equities appear—and none is suggested herein—the rule invoked by appellant does not apply.

As we regard the matters presented for our appellate review, we are not asked to pass on the sufficiency of plaintiff's petition—in view of *Byers Rural High School v. Stafford County Comm'rs*, 121 Kan. 287, 246 Pac. 681; id. 121 Kan. 832, 250 Pac. 313; and *School District v. Kingman County Comm'rs*, 122 Kan. 213, 251 Pac. 631.

The judgment is affirmed.